## WILLIAM GRIST *v.* HENRY J. FOREHAND.

1. GUARDIAN AND WARD: CONFLICT OF LAWS: GUARDIAN'S POWERS.—A guardian has no power over the property of his ward beyond the jurisdiction in which he received his appointment. See Story's Conflict of Laws, ¿ 504, a.
2. SAME: RIGHT OF ADMINISTRATOR AND GUARDIAN TO SUE IN FOREIGN JURISDICTION.—The reduction into his possession by an administrator of the movable

property of his intestate, in the jurisdiction in which he received his appointment, vests in him the legal title, and he becomes, to all intents and purposes, the legal owner of it, though as trustee within that jurisdiction; and his title and ownership thus accrued will be respected in every other country. But the rule is different in relation to a guardian, for the legal title to the property of his ward does not vest in him, but remains in the ward, and he is simply an agent or trustee for its management; and hence he cannot sue for the recovery of his ward's movable property in another jurisdiction, although he may have reduced it into his possession in the jurisdiction in which he received his appointment.

3. SAME: ACT OF 1854, CH. 2, SEC. 14, PAGE 69: QUALIFICATION OF FOREIGN GUARDIAN.—By the Act of 1854, ch. 2, sec. 14, p. 69, a foreign guardian or administrator is authorized to maintain suits in the courts of this State, upon his filing in the Court of Probates of the proper county in this State, a certified copy of his letters and of his official bond, and upon his entering into bond here, to account to the court, from which he received his appointment, for all moneys he may receive in this State.

4. SAME: COMPLIANCE WITH ACT OF 1854 AFTER BILL FILED: HOW MADE KNOWN TO COURT: CHANCERY: AMENDMENT.—Where a foreign guardian has instituted a suit in equity in this State to recover property belonging to his ward, without complying with the Act of 1854, ch. 2, sec. 14, he may afterwards perfect his right to sue by complying with the act. But in such a case he must show his title to sue by an amendment of his bill, the mere filing with the record the evidence of his compliance, will not do. See 1 Danl. Ch. Pr. 367.

APPEAL from the Chancery Court of Panola county. Hon. P. T. Scruggs, chancellor.

*H. A. Barr*, for appellant,

Cited Story's Confl. L. §§ 504, 515; 1 Parson's Cont. 114; Story's Eq. Pl. §§ 57, 58; *Brown* v. *The Bank of Mississippi*, 2 George, 450.

*C. Miller*, for appellee,

Cited *Fuqua* v. *Hunt*, 1 Ala. R. 197; *Sutherland* v. *Goff*, 5 Porter R. 506; *Hooks* v. *Smith*, 18 Ala. 338; Hutch. Dig. p. 504, § 127; Ib. p. 507, art. 3; *Keith & Vaiden* v. *Jolly*, 26 Miss. 131; Session Acts of 1854, p. 68, § 14; 1 Danl. Ch. Pr. 367.

HANDY, J., delivered the opinion of the court.

This bill was filed by the appellee, as guardian of Jasper and Margaret Nance, to recover certain slaves belonging to the wards, and in the possession of the appellant. The appellee claims title

in his bill as guardian, under appointment from the proper court in the State of Arkansas, where the wards reside, showing no steps taken in this State to authorize him to exercise the functions of guardian in this State.

The appellant filed a demurrer to the bill, relying upon the want of capacity of the guardian to sue in this State, in virtue of his appointment in Arkansas; and the demurrer was overruled, and the case proceeded to final hearing upon bill, answer, and proofs, when a decree was rendered in favor of the appellee; from which this appeal is prosecuted.

It is clear that the objection to the capacity of the guardian to sue in this State, in virtue of his appointment in Arkansas, was well taken, such appointment conferring no power over the property of the wards beyond the jurisdiction where the appointment was made.    Story's Confl. Laws, § 504, a.

But the effect of this rule is attempted to be avoided on two grounds : —

1st. It is said that it appears by the bill and exhibits, that the guardian recovered possession of the slaves in an action of replevin in the State of Arkansas, and that he is thereby clothed with the possession, and is entitled to maintain an action to recover the same in another State, upon the same principle by which an administrator, having reduced personal property of his intestate to possession, is entitled to sue for it in another State.    But this position is untenable for two reasons : 1st. An administrator, having obtained possession of a chattel belonging to his intestate in his lifetime, in the jurisdiction from which he derived his office, is thereby invested with the legal title, and is, to all intents and purposes, the legal owner of it, though as trustee, within the jurisdiction of his appointment; and having been clothed with such title within that jurisdiction, it will be respected in any other country, and in virtue of his title derived from the possession, he may sue for it in any other country. Story's Confl. Laws, § 516.    But as between guardian and ward, the legal title to the property does not vest in the guardian, but remains in the ward.  The guardian is simply the agent or trustee for its management, with certain powers over it, the legal title being in the ward.    In this respect, the condition of the guardian differs materially from that of an administrator.    But 2d, it does not ap-

pear that the slaves were reduced to possession by the guardian, in Arkansas. The exhibit to the bill shows a suit in the name of the wards, by their guardian, for the recovery of possession, and a judgment in favor of the plaintiffs; but it does not show that possession was delivered under the judgment; and on the contrary, the bill alleges that the slaves were removed from Arkansas to this State by the defendant in the judgment, and were not delivered to the guardian.

2d. It is said that the record shows that the guardian was authorized to sue in this State, by having filed in the proper Probate Court in this State, his letters of guardianship granted in Arkansas, and the bond for the execution of the trust given there, and having executed bond in the Probate Court in this State according to the Statute of 1854, ch. 2, § 14. The record shows, that several months after the demurrer was overruled, a copy of the bond executed in the Probate Court in this State was filed in the cause; and this bond bears date after the filing of the bill. It was not, however, set up by way of amendment to the bill, and could not, therefore, aid the defective title set up in the bill. The demurrer was taken, relying on the incapacity of the complainant, who claimed solely as guardian under an appointment in Arkansas. If the bill had been amended so as to show the subsequent execution of the bond in this State, the objection might have been obviated. 1 Daniel Ch. Pr. 367. But without such amendment, the bill was clearly insufficient, and the demurrer to it should have been sustained.

The decree overruling the demurrer must, therefore, be reversed, the demurrer sustained, and the bill dismissed.